Julio E. Dávila, Plaintiff and Appellant, *v.* International Parking Co., Defendant and Appellee.

No. R-64-20.        Decided November 5, 1964.

*César J. Dones Magaz* for appellant. *Francisco Ponsa Feliú* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

Mr. Justice Belaval delivered the opinion of the Court.

According to the findings of fact made by the trial court, "On March 11, 1962, plaintiff parked his Chevrolet automobile . . . in defendant's parking lot in the International Airport in a place of his choice, wound up the windows, locked the doors and the trunk, put the key in his pocket, and went to the airport building to meet his father-in-law who was returning from the United States; (2) that plaintiff did not deliver his automobile to defendant, but was given a check authorizing him to park his car in the parking area, on which check was written, among other things, the following: 'You pay for the right to park your car in this area. Your car will be properly guarded. We are not responsible for articles left in the car. If you park your car for a day or longer, see the employee for instructions'; that plaintiff returned some time later and did not find the automobile which he had parked in that place shortly before; that he went to see the attendant at defendant's office and was informed that they did not know who had taken the car; that plaintiff had in the trunk of his automobile, which was locked, the articles described in the fifth allegation of his complaint and which he did not report in defendant's office; that plaintiff's car was insured against theft, and the insurance company paid him the value of the car which was afterwards found smashed and the articles which he had in the trunk, which had also been forced open, were missing."

In its conclusions of law the trial court considers the following factors sufficient to determine appellee's non-liability: (1) "That in the business operated by defendant it only provides premises for its patrons for parking their automobiles while they are at the airport upon payment of a small amount of money, without taking charge directly of the automobiles or property left therein; (2) that in the ticket for admission to the parking area the defendant warns that it is not responsible for articles left inside the car,

and that it will only properly guard the cars parked therein; (3) that since plaintiff retained direct control of his automobile by parking the same in the place of his choice and locking it completely, defendant could not have control of the car nor of the objects therein, since neither the objects nor the automobile were delivered personally to its employees; (4) that plaintiff never made with defendant a contract of bailment of his automobile and the objects therein, since he retained the key in his possession which permitted him to control the movement of the car and of the objects allegedly kept therein."

1—The first legal principle established to refuse liability, based on the fact that appellee only provides premises for its patrons for parking their automobiles without receiving directly, for care, the automobiles or property left therein, seems to part from the premises that the lessee or user in this case may choose freely between the lot offered by appellee and other parking lots offered by its competitors, in which case the contractual will, even in the limited manner in which it usually manifests itself in a case such as this, operates as a free act of the will, without coercion or administrative pigeonhole. In that assumption, our opinion in the case of *Rivera* v. *San Juan Racing Association, Inc.*, 90 P.R.R. 405, 410 (Blanco Lugo) (1964), contains a varied exposition of the different contractual elements which may be produced in a parking contract. Yet, in *Rivera* we did not consider the assumption of an exclusive concession.

The problem presented in exclusive. concessions, · even though they resemble slightly the contractual institute, is that the element of will is limited because the lessee of the lot, the user of the place, or the voluntary depositary cannot exercise his juridical autonomy to choose between some conditions and others. As a question of reality, in the absence of an elaborate government regulation, the conditions to be met by the exclusive grantees are those inherent in a juridi-

cal order capable of harmonizing the public and the private interest. As an example of this interest of harmonizing the beneficial effects of the exclusive concession or the administrative regulation of the ordinary business with the private interest, we may cite Act No. 107 of June 27, 1964 (Sess. Laws, p. 326) to authorize the Economic Stabilization Administrator to regulate certain aspects of the business of lots and premises for the public parking of motor vehicles, § 2 of which provides: "The scope of the powers hereby conferred shall be deemed to cover, but without limitation . . . the requirement of minimum standards of safety and personal convenience for the clients, visitors, and the employees, and the furnishing of appropriate security, through insurance or otherwise, to recover damages sustained by the users of the said motor vehicle public parking places and their vehicles. Nothing herein provided shall be understood in the sense of giving powers to the Economic Stabilization Administrator to impose in the operators of lots and premises devoted to the public parking of motor vehicles, by regulations or otherwise, any civil liability for damages in addition to or in excess of the liability therefor imposed by the laws of Puerto Rico." In any event, under the pure theory of Law in the case of exclusive concessions, a new field is opened by the concession to include the forced possession produced by the exclusive concession as a modality of the necessary bailment, with an implied displacement of the possession, because of the fact that the custody of the parked vehicle is more subject to the will of the exclusive grantee than to the will of the lessee, user, or bailee.

■ Independently of its theoretical situation within the science of Law, if a parking contract is made between an exclusive grantee and the owner of a motor vehicle, since among the implied duties of the concession which cannot be bettered by the competition are the vigilance or custody and the conservation of the thing, the mere parking of the

vehicle within the premises comprised in the exclusive concession renders the exclusive grantee liable for the destruction, depreciation, or undue use of the motor vehicle object of the contract up to the amount of the value of the vehicle at the time of delivery. The ritual element of the delivery, a characteristic feature of the typical contract of bailment, is not the juridical factor which determines the liability in other atypical forms of the contractual institute in which the relations and terms of a contract of custody are deemed understood.

■■ 2–4 There is, however, a limitation in the cause of action which deserves special consideration. Since the automobile was insured against destruction, depreciation, or any other undue loss under another independent policy carried by Dr. Dávila, the case narrows down to a determination of liability of the company which operates the parking lot for certain personal property kept in the trunk of the stolen automobile. The findings of fact made by the trial court refer to the description of those articles appearing in the fifth averment of the complaint, as follows: a portfolio containing personal documents worth $50, a cautery machine worth $80, a bag containing surgical instruments worth $500, and an electric razor worth $20, making a total of $650. It is a fact satisfactorily proved that Dr. Dávila did not inform any employee of defendant-appellee that the trunk of the automobile contained such personal property, and, therefore, defendant-appellee was not given an opportunity to inspect them and to adopt proper protective measures. If this had been done, the case would be a typical case of necessary bailment. See, for example, § 1683 of the Civil Code of Puerto Rico (1930), 31 L.P.R.A. § 4693 (p. 454). There is no question that in the case of property comprised within the normal equipment of a motor vehicle such as spare tires, mechanical repair tools, etc., even though

they are not in sight but which from experience and ordinary observation it is known that they form part of the operation of the motor vehicle, there is no duty on the part of the owner of the automobile to inform the owner of the parking lot of such property in order that it may come within the protection due the automobile, there being liability for its destruction, disappearance, or improper use; there is obligation on the part of the owner of the vehicle to be parked to inform the owner or the employee of the owner of the parking lot on the amount, the quality, and the value of the special objects kept in the automobile in order that they may be properly guarded. If this is not done, there is no liability on the part of the owner of the parking lot to compensate the damages caused through theft, undue use, or breach of the parking contract as to such special objects.

■ Although it is true, as stated by Puig Peña in considering a similar situation in a lodging contract, that the liability may be limited by agreement between the parties, the doctrine understands, justifiedly, that any unilateral declaration of the owner of the place limiting his liability would violate the general civil-law principles governing liability and would have no effect or validity whatsoever. IV-II Puig Peña, *Tratado de Derecho Civil Español* 424 (1951 ed.).

For the reasons stated, the judgment rendered on December 5, 1963 by the Superior Court of Puerto Rico, San Juan Part, will be affirmed.